1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   MARIA QUEZADA, et al.                Case No.:   19cv2153-LAB (DEB)

12                         Plaintiffs,
                                          **ORDER GRANTING IN PART**
13   v.                                   **MOTION TO DISMISS**

14   FRANKLIN MADISON GROUP,
     LLC
15
16                         Defendant.

17

18        Plaintiffs Maria Quezada and John Rodriguez filed this putative class action,

19   bringing claims related to their purchase of accidental death and dismemberment

20   (AD&D) insurance from Defendant Franklin Madison Group, LLC, known at the

21   time as Affinion Benefits Group, LLC.  Plaintiffs allege they were led to believe they

22   were purchasing group AD&D Insurance at favorable rates, when in fact the rates

23   were inflated. They bring claims under Cal. Bus. & Prof. Code §§ 17200, *et seq.*

24   (Unfair Competition Law, or UCL) for both fraudulent and unfair business practices.

25   **Legal Standards**

26        A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.

27   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Factual allegations must be

28   enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id.* at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of misconduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). In addition to the complaint's allegations, the Court may consider documents attached to the complaint, or incorporated by reference.  *See Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019).

The Court does not weigh evidence or make credibility determinations. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013). That being said, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

To meet the ordinary pleading standard and avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The well-pleaded facts must do more than permit the Court to infer "the mere possibility of misconduct"; they must show that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679. Allegations that are merely consistent with liability are insufficient. *Id.* at 678.

Claims that sound in fraud, including those arising under state law, must be pled with particularity. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). This includes claims under California's UCL.

*Davidson v. Kimberly-Clark*, 889 F.3d 956, 964 (9th Cir. 2018). Plaintiffs must allege who made various misrepresentations, how the misrepresentations were conveyed to the plaintiff, and under what circumstances. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998). It requires a plaintiff to explain why statements were misleading or false. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

New allegations in opposition to a Rule 12(b)(6) motion to dismiss may be considered when deciding whether to grant leave to amend, but are not considered when ruling on the motion itself. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

**Discussion**

**Factual Background**

The following factual background is taken from the complaint. Quezada is an account holder at Citibank, and Rodriguez was an account holder at the San Diego County Credit Union (SDCCU).

In 2013, Rodriguez received a solicitation on the SDCCU letterhead, offering him $3,000 worth of free AD&D insurance paid for by SDCCU, along with the option of purchasing up to $300,000 of additional coverage from The Hartford at the "affordable group" rate of $1.00 per month per $10,000 worth of coverage, or about 3 cents a day.  The letter promised guaranteed acceptance with no required medical exam. Rodriguez activated his free $3,000 AD&D coverage, and purchased an additional $100,000 in coverage. The premiums were paid directly from his SDCCU account.  He later increased his coverage to $150,000. The solicitation letter and later correspondence sent to Rodriguez are attached as exhibits to the complaint. SDCCU is listed as the policy holder.

In 2014, Quezada received similar solicitations from Citibank. She purchased coverage, and as late as June, 2019, had $200,000 coverage. No correspondence sent to her is attached to the complaint, but the complaint alleges

her solicitation letter was substantially similar to Rodriguez's. The holder of her policy is Financial Services Association, a group created by Affinion as a means of marketing group insurance policies.

Plaintiffs allege that the solicitations omitted material information and contained half-truths, rendering them deceptive. They allege that Affinion failed to disclose its marketing relationships with the financial institutions, and the commission arrangement, which accounted for a substantial portion of the policies' cost. They allege that the wording of the solicitations misled them into thinking the offer was better than they would receive from other sources. They also allege they were misled into thinking they were getting favorable group rates, even though other group rates were substantially lower. They claim they were harmed as a result.

The Court need not rely on the parties' characterization of documents. It has the benefit of the actual solicitation Rodriguez received and relied on (Compl., Ex. A ("Rodriguez Letter")), as well as later correspondence. Plaintiffs allege that the solicitation sent to Quezada was substantially similar to this one. While dismissal of UCL claims is not usually appropriate at the pleading stage, it sometimes is, particularly where the allegedly false or misleading communication is provided to the Court and no outside information is needed. *See Williams v. Gerber Prods. Co.,* 552 F.3d 934, 939 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995)).

**Standing**

Plaintiffs must establish both Article III standing, and statutory standing under the UCL. *See Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 917–920 (N.D. Cal., 2013) (analyzing Article III and statutory standing for UCL claim separately). *See also Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001) (explaining that a plaintiff litigating in federal court must show Article III standing, regardless of whether he or she could have brought the same action in state court).

But because the "injury in fact" analysis is more stringent under the UCL, the Court's analysis will focus on that. *See id.* at 919. In order to show standing to bring California UCL claims, a party must show economic injury (*i.e.*, a loss of money or property) caused by the unfair practice. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). There are "innumerable ways" a plaintiff can show economic injury. *Id.* One way is to show he or she would not have bought the product had the required disclosures been made. *Id.* at 328.

*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583 (Cal. App. 4 Dist.) addresses a situation analogous to this one. Plaintiffs in that case bought insurance from an unlicensed seller, who illegally retained a percentage of their premiums. They did not allege that they did not want the insurance, or that the policy they obtained was unsatisfactory, or that they did not know and agree to the price. Rather, they claimed that the portion of the purchase price attributable to unlawful commissions amounted to an injury. They did not allege that the unlawful commission caused them to pay more than the agreed price, or that they could have bought the same insurance from another seller for a better price. *Id.* at 1591. They therefore failed to allege an injury in fact, and lacked standing. *Id.* at 1592.

Plaintiffs have not alleged that they did not want AD&D insurance, or that they did not receive the policy they intended to buy at the agreed-on price. Nor have they alleged any injury grounded in Defendant's failure to disclose its business agreements or factors leading it to price the policy as it did. And, as Defendant points out, they also did not allege that they could have bought AD&D insurance at lower rates.

Besides failing to establish statutory standing, the complaint does not plead facts showing an injury in fact and causation sufficient to establish Article III standing. Allegations that Plaintiffs would not have purchased insurance if required disclosures had been made would suffice. But extending that rule to omission of information that a defendant has no duty to disclose would afford standing to

anyone who had purchased a product and could later identify something they wish they had known about it. *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 904 (N.D. Cal., 2020) (holding that, for UCL claims, actual reliance is required to demonstrate causation for purposes of Article III standing); *Hall v. Sea World Entertainment, Inc.*, 2015 WL 9659911, at *6 (holding that plaintiffs could not have relied on omissions that defendant had no duty to disclose). This would stretch Article III standing past the breaking point.

Because the complaint fails to allege facts giving rise to standing under the UCL or Article III, it will be dismissed. However, in their opposition to the motion to dismiss, Plaintiffs for the first time allege they could have bought comparable AD&D insurance at individual rates for less than they paid for their policies. This may be enough to establish standing, at least with regard to any implied representation that Plaintiffs were being offered a special discounted group rate. Plaintiffs will be given leave to amend to correct this defect, but their amended pleading must show that they — rather than a hypothetical buyer[1] — could have bought AD&D insurance for lower rates, and would have done so but for misrepresentations about discounted group rates. Showing that the same policy was available to Plaintiffs for dramatically lower prices through other sources might also plausibly show that the policy was worth less than Plaintiffs paid for it. Plaintiffs would also need to plead facts showing that reasonable consumers would understand group rates to represent a discount over individual rates.

/ / /

/ / /

---

[1] Defendant points out that insurance premiums vary depend on demographics, such as the state of residence. Showing that someone else besides Plaintiffs could have bought the same insurance at lower rates would not suffice to show an injury in fact.

The party invoking the Court's jurisdiction — here, Plaintiffs — bears the burden of establishing it and, until then, jurisdiction is presumed to be lacking. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). In the absence of a showing of standing, the Court cannot reach the merits. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n.2 (1998). However, because Plaintiffs are being given leave to amend and can likely amend successfully, a discussion of the most salient points of the complaint follows.

**First Cause of Action: Fraudulent Business Practices**

The allegedly fraudulent omissions and half-truths turn on several main issues, including undisclosed business relationships and pricing factors; suggestions that the offer was a particularly good one; references to the policy as an "affordable" group rate; and use of the name of a group, Financial Services Association, in connection with the solicitation. It is undisputed that the price and coverage information were accurately disclosed to Plaintiffs. Plaintiffs' contention, in other words, is not that they bought insurance that was not what they thought it was, or that cost more than they thought it would. Rather, they argue they purchased insurance that they were misled into thinking was being offered at discounted group rates, when in fact the price was not comparable to other group rates for AD&D insurance policies, and was not a good deal.

The parties agree that fraud claims must be based on breach of a duty to disclose. Under *LiMandri v. Judkins*, nondisclosure or concealment may constitute actionable fraud:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

52 Cal. App. 4th 326, 336 (Cal. App. 4 Dist. 1997). Other than the first prong, which is inapplicable here, all require nondisclosure or concealment of some material

19cv2153-LAB (DEB)

fact. An omission is material if a reasonable consumer would attach importance to it in determining his choice of action in the transaction. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). A fraudulent omission claim requires actual reliance. *Id.*

**Failure to Disclose Business Relationships**

The complaint points out that the solicitation says that Rodriguez was receiving the offer because he was a member of SDCCU. Although this was true, its significance was different than Rodriguez might have thought. He and other SDCCU customers received the solicitation because of SDCCU's business relationship with Affinion, rather than as a favor to SDCCU customers. Although the letter did not say as much, a person reading the solicitation might have believed SDCCU had negotiated a special deal with The Hartford, or that SDCCU customers held some special status entitling them to lower premiums or better coverage.

That being said, the solicitation is clearly a marketing letter, offering an insurance policy for sale. The letterhead identifies Rodriguez's letter as originating from SDCCU, but it bears two signatures: one from SDCCU's executive vice president Patrick Cosgrove, and one from Doug Smith, identified as an agent of The Hartford, and the plan administrator. It refers the recipient to an enclosed brochure, or invites him to call the plan administrator for more information. The complaint alleges that the solicitation failed to disclose that Smith was employed by Affinion at the time (Compl., ¶ 52), but does not explain why this would be significant. Smith is clearly identified as being involved in the sale of insurance for profit. And the solicitation cannot reasonably be read as a letter from a disinterested third party. Furthermore, because the solicitation came from both SDCCU and the insurance company and was signed by representatives of both companies, it would have been clear there was some kind of business arrangement between the two. Other information on the solicitation

identified The Hartford as an insurance company and Affinion as the plan administrator.

Defendant's failure to spell out its business relationship with SDCCU and Citibank cannot be considered fraudulent. It reasonably disclosed the fact that the insurance was being sold commercially by an outside seller, and that there must have been some kind of business relationship between the financial institution and the seller. It is doubtful whether any consumer would attach any significance to the particulars of the business arrangements here. And in any event, the complaint does not allege that Plaintiffs relied on the absence of business relationships.

**Failure to Disclose Price Basis**

Because of a series of commissions and other similar payments, markups constituted 60% of the premiums Plaintiffs paid. While the complaint alleges Plaintiffs would not have bought the policies if they knew about the basis for the price, the reasonableness of this allegation is open to question. Reasonable consumers know that commercial insurance companies, agents, and everyone else involved in the sales process must sell polices at prices higher than actual cost in order to make a profit. The total price charged must cover not only the cost of the policy, but also the cost of marketing and selling it, as well as some profit for the various entities and agents. In this case, Plaintiffs allege, the markup was unusually high.

Although reasonable consumers consider price to be an important factor, the complaint does not explain why the particulars of how that price is arrived at would be material. Disclosure of excessive markups is required in some circumstances, such as the sale of securities, *see S.E.C. v. Rauscher Pierce Refsnes, Inc.*, 17 F. Supp. 2d 985, 996–97 (D. Ariz. 1998), or where the markups in question are not permitted. *See Weiner v. Ocwen Fin'l Corp.*, 2015 WL 4599427, at *7 (E.D. Cal., July 29, 2015) (defendant's failure to disclose marked up fees could support a fraud claim, where deed of trust did not permit them).  But disclosure of markups

is not routinely required. *See Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 483–84 (Cal. App. 2 Dist. 2006) (affirming summary judgment for defendant on claim for failure to disclose 100% markup on carrier's declared value coverage). As long as the actual price is disclosed and plaintiffs agreed to pay it, failure to disclose the basis or nature of markups is not actionable under California's UCL in this case. *See Graham v. VCA Antech, Inc.*, 2016 WL 5958252, at *10 (C.D. Cal., Sept. 12, 2016) (citing, *inter alia, Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334–35 (Cal. App. 4 Dist. 2002).)  What a seller chooses to do with the markup included in the prices buyers pay is of no legitimate concern to the buyers.  *See Searle* at 1334–35 (rejecting both fraud and unfair practices claims under UCL for hotel's mandatory service charge, which the hotel was free to do with as it wished).

### Representations Regarding Price

The complaint alleges that the description of the policy as "affordable" was false or misleading. (Compl., ¶¶ 58 ("the supposedly 'affordable' group coverage"), 70 ("The solicitation Plaintiff Quezada received touted affordable AD&D coverage . . . .")) Defendant cites authority for the proposition that this amounts to mere non-actionable puffery. *See Vitt v. Apple Computer, Inc.*, 469 Fed. App'x 605, 607 (9th Cir. 2012). In their opposition, Plaintiffs abandon this argument, and focus instead on the "group rate" representation.

The complaint alleges that Quezada's solicitation mentioned the name of the group policyholder as "Financial Services Association," which is in fact a group of account holders assembled by Affinion.  The complaint argues that the solicitation misrepresented this as "a true group with the best interests of its members as a priority." (Compl., ¶ 72.) Based solely on the name of the group and the information alleged, this is an unreasonable inference. The group name does not suggest what kind of group it is, and identifying it as a policyholder adds nothing to the analysis. The allegations do not plausibly explain why the use of this name was fraudulent. / / /

The complaint also points out that the solicitation repeatedly refers to group rates, and alleges that this is associated with lower prices. Here, Plaintiffs are on somewhat firmer ground, bearing in mind that this could lead a reasonable consumer to believe that the rates are lower than other rates, or are special in some way. That being said, the complaint merely compares these group rates to other group rates, and alleges they were higher. Obviously, not all group rates are the same, and some are necessarily higher than others. Merely mentioning the phrase "group rates" does not imply that the rates at issue are the best group rates available. If, however, Plaintiffs can allege facts showing that these rates were misrepresented as being more favorable than individual rates available to them for comparable coverage, they may be able to state a claim for fraudulent omission.

### Other Allegations

The solicitation mentions that acceptance was guaranteed, that no medical exam was required, and there were no health questions to answer. The complaint alleges that these are intended as claims of uniqueness or superiority to other policies. (Compl., ¶ 56.)  Because this kind of policy does not require individual underwriting, these are not unique or special features. (*Id.*)   While these statements are made with the apparent intent to encourage the recipient to purchase the policy, apparently by anticipating and countering possible reasons for the recipient to hesitate, and providing information buyers might not know. The letter does not suggest a comparison with other policies, *e.g.*, by suggesting that these features are unusual or serve to distinguish the policy being offered.

The complaint also raises some issues only partially, without developing them. For example, it implies that something about the offer of $3,000 in free coverage, paid for by the financial institutions where they had their accounts, was somehow misleading. The complaint encloses the word "free" and the phrase "credit union-paid coverage" in quotation marks, as if they are misleading in some way. (Compl., ¶¶ 51, 53; Opp'n to Mot. to Dismiss at 5:9–12.) Clearly, offering a

small amount of free coverage was a marketing ploy. But nothing in the complaint suggests that the coverage, minor though it was, was not available for free as offered. Nor do any alleged facts suggest this offer was false or unfair. The complaint also points out that the letter mentions the possibility that people can be injured in accidents, and suggests that this is used as a means of frightening its targeted customers. (Compl., ¶¶ 54–55.)

> No one can predict what the future will bring. One thing is for sure — accidents can happen. And if an accident happens to you, this coverage and any additional protection you select could mean greater security for your family at a time they may need it most.

(Rodriguez Letter at 2.) When selling insurance against accidental death or dismemberment, mentioning the possibility of death or dismemberment is unremarkable. Why this would frighten people into buying insurance is not explained.

**Second Cause of Action: Unfair Competition**

Most of the analysis for this claim is the same as for fraudulent business practices. Importantly, unusually high prices or steep profit margins are not generally actionable as unfair. *Searle*, 102 Cal. App. 4th at 1334–35. Failure to disclose the basis for prices is also not generally actionable as an unfair practice, as long as the actual price is disclosed and the buyer agrees to it. *Id.* The "unfairness" prong of § 17200 "does not give the courts a general license to review the fairness of contracts . . . ." *Id.* (quoting *South Bay Chevrolet v. Gen'l Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (Cal. App. 4 Dist. 1999)).

The sole issue where the complaint is on firm ground is the "group rates" representation. Even if this is not literally false or fraudulent, it could be considered a sharp practice, particularly if it can be shown that comparable individually-priced AD&D policies were available to Plaintiffs. *See South Bay Chevrolet* at 886 ("In general, the unfairness prong has been used to enjoin deceptive or sharp practices.")

**Judicial Notice**

Plaintiffs ask the Court to take judicial notice of the Minnesota Life Insurance Company's website showing individual insurance rates to California customers. Taking judicial notice of the website, even if it were indicated here, would not cure pleading defects. Furthermore, as Defendant points out, the rates shown on the website are for accidental death insurance, not accidental death and dismemberment insurance.

**Conclusion and Order**

For these reasons, the motion to dismiss is **GRANTED IN PART**.  The complaint is **DISMISSED WITHOUT PREJUDICE.** No later than **28 calendar days from the date this order is issued**, Plaintiffs may file an amended complaint that corrects the defects this order has pointed out. If Plaintiffs fail to amend within the time permitted, the Court will construe it as a concession that the complaint cannot be successfully amended, and will dismiss this action. If Plaintiffs amend but fail to correct defects that have been pointed out, the Court may construe this as an admission that no further amendment is possible.


**IT IS SO ORDERED**.

Dated:  September 29, 2020

_Larry A. Burns_

Honorable Larry Alan Burns
Chief United States District Judge

19cv2153-LAB (DEB)